Carrie Haw, Appellee, v. 1933 Grill, Inc., Appellant.

Gen. No. 40,209.

38

Heard in the second division of this court for the first district at the June term, 1938. Opinion filed October 18, 1938.

EKERN & MEYERS, of Chicago, for appellant; DONALD L. THOMPSON, of Chicago, and VERNON A. FORSBERG, of counsel.

JAMES F. McNICHOLAS, of Chicago, for appellee.

Mr. Justice John J. Sullivan delivered the opinion of the court.

This appeal seeks to reverse a judgment for $403.68 entered upon the verdict of a jury against defendant, 1933 Grill, Inc., in an action brought by plaintiff, Carrie Haw, under the Dramshop Act (sec. 14, § 135, ch. 43, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 68.042]) for damages for loss of property and loss of her husband's support.

Plaintiff's complaint alleged in substance that on March 13, 1935, defendant, 1933 Grill, Inc., with the knowledge and consent of the Hamilton Club of Chicago, conducted a tavern in premises owned by said Hamilton Club at 24 South Dearborn street, Chicago, where it sold and gave away alcoholic liquors; that "at the place and time aforesaid the servants and agents of said defendant, 1933 Grill, Inc., at said premises known as 24 South Dearborn street, sold or gave to one Fred J. Haw, Sr., the husband of this plaintiff, intoxicating liquors, and then and there by said selling or giving said alcoholic liquors as aforesaid did cause the intoxication of said Fred J. Haw, Sr., and that while so intoxicated and in consequence of such intoxication at the time and place aforesaid said Fred J. Haw, Sr., then and there without using the care a reasonably prudent person under the same or similar circumstances would have used, engaged in physical combat with Fred Belmont, one of the managers of said 1933 Grill, Inc."; that "as a result of said physical altercation said Fred J. Haw, Sr., received a severe injury to his right eye, which necessitated considerable hospitalization and medical care, and resulted in the loss of about twenty weeks employment by Haw"; that "Fred J. Haw, Sr., was without funds or property with which to pay for medical care and attention, and that plaintiff herein, as the wife of said Fred J. Haw, Sr., was able to and was legally obliged to pay for the necessary medical care and attention to the injury to

the eye of said Fred J. Haw, Sr., . . . and to expend
large sums of money in repairing said injury''; that
''from March 13, 1935, to and including July 31, 1935,
she was deprived of the support usually given her by
said Fred J. Haw, Sr., and to which she was entitled,
because of his total incapacity arising from said in-
toxication''; and that ''there was at the time and place
aforesaid in full force and effect a certain statute of
the General Assembly of Illinois, entitled, 'An Act Re-
lating to Alcoholic Liquors,' approved January 31,
1934, and by reason of the provisions of said statute
the defendants complained of herein were and are
liable for the damage sustained by plaintiff . . . by
reason of the intoxication of said Fred J. Haw, Sr.,
whereby said plaintiff suffered a loss of property and
a loss of support as aforesaid.''

The suit was originally instituted against the Hamil-
ton Club, the owner of the premises, and 1933 Grill,
Inc., which conducted the tavern in question. Both
answered admitting that the latter operated its tavern
for the sale of alcoholic beverages in the premises
owned by the former and with said owner's knowledge
and permission but denied or otherwise put in issue
all other allegations of the complaint. During the trial
plaintiff took a voluntary nonsuit as to the defendant
Hamilton Club.

The evidence disclosed that plaintiff's husband with
a friend visited the 1933 Grill, Inc. (hereinafter re-
ferred to as the defendant) on the evening of March 13,
1935, where he purchased or at least was served with
whisky, the amount of which was testified to variously
as being from 5 to 15 drinks, which he consumed and
which caused him to become intoxicated; that after he
became intoxicated, Haw conducted himself in a
boisterous manner and used profane language; that
Fred Belmont, one of defendant's floor managers,
remonstrated with Haw several times and admonished

him that he would be removed from the premises unless he behaved properly; and that thereafter Belmont either punched plaintiff's husband in the eye or put his arms around him, presumably to put him out of the tavern. Belmont testified that in the altercation or scuffle, which ensued after he put his arms around Haw, he probably struck him in the eye with his elbow or some other part of his body "because he has a pretty good hold and I swung away . . . he had his arms around me and I tried to break away from him." Haw received a serious injury to his right eye, which necessitated medical treatment over a considerable period and resulted in the loss of his employment for many weeks. Since he had no funds to pay for the medical services rendered him, plaintiff paid for such services and also suffered the loss of his support for the period he was out of employment as the result of his injury. No question is raised as to the reasonableness of the damages awarded.

Defendant's theory is that the injuries suffered by plaintiff's husband "were not the result of intoxication, but of an independent intervening cause, which, according to plaintiff's testimony, was a malicious assault by a non-intoxicated or sober person, Fred Belmont."

Plaintiff's theory as stated in her brief is that "the injury sustained by plaintiff's husband was caused in the course of his attempted eviction, that his attempted eviction was brought about because of his intoxicated condition; that the necessity for maintaining quiet and order in the tavern in question is a normal incident in the conduct of such business, and the necessity for the eviction of intoxicated customers is one that is foreseen by the operator of such tavern."

Defendant's major contention is that the trial court erred in denying its motion for a directed verdict at the close of all the evidence and its motion for judg-

ment notwithstanding the verdict of the jury because it claims no liability under the statute was shown. It insists that (1) "in order to create a liability under the Illinois Dram Shop Act, the plaintiff must show that the sale of alcoholic liquor was the proximate cause of the injury complained of," and that (2) "an injury to a drunken person due to a malicious assault by a third person who is not intoxicated creates no liability under the Dram Shop Act."

The section of "The Act relating to alcoholic liquors" (this act is substantially the same as the old Dramshop Act, the only difference being that the words "alcoholic liquors" are substituted in the present act for the words "intoxicating liquors" used in the former act), under which this action is brought, is in part as follows:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person." It will be noted that the quoted portion of the act affords a right of action to one injured in person or property, or means of support (1) "by any intoxicated person" or (2) "in consequence of the intoxication, habitual or otherwise of any person." In the first instance the action is for a direct injury inflicted by an "intoxicated person" and in the second instance it is for such injury as may be suffered in consequence of the intoxication of any person.

In *Whiteside v. O'Connor*, 162 Ill. App. 108, in discussing the former Dramshop Act, the court said at pp. 112 and 113:

"In *King v. Haley,* 86 Ill. 106, the injury for which damages were sought to be recovered were directly inflicted by one Koffman, while intoxicated, and the court in construing the ninth section of the act entitled Dram-Shops, held that it provided for two separate and distinct causes of action—one for the direct injury inflicted by 'an intoxicated person,' and the other for such damages as might arise 'in consequence' of such intoxication. It was there further held that the theory adopted by the trial court that there could be no recovery except for injuries that resulted to the plaintiff in 'consequence of the intoxication' of the person who inflicted the injury was erroneous and arose out of a mistaken view of the law. . . . When the distinction between the two grounds of action provided for by the statute is clearly recognized much of the uncertainty arising from the apparent indiscriminate application and reference to the doctrine of proximate cause in the adjudicated cases will disappear. When the action is for an injury resulting from the direct, affirmative act of an intoxicated person the doctrine of proximate cause has no application, and a liability accrues upon proof of that fact, but where the action is for an injury resulting 'in consequence of intoxication habitual or otherwise,' it is incumbent upon the plaintiff to show that such intoxication was the proximate cause of the injury."

The following statement as to the construction generally given to statutes such as ours governing the gift or sale of intoxicating liquor appears in 15 R. C. L., par. 206, pp. 435, 436:

"Whether injury or damage remotely as well as proximately due to the intoxication may be recovered under a civil damage act depends usually upon the phraseology of the statute. The type of act frequently used provides for recovery for injury to person, property or means of support 'by an intoxicated person,

or in consequence of the intoxication of any person' (the second phrase sometimes reading 'by reason of'). Where, under such a law an action is brought for an injury inflicted by the affirmative act of an intoxicated person, and is therefore based on the clause 'by an intoxicated person,' the courts are practically unanimous in holding that it is not necessary that the intoxication be the proximate cause of the injury, and the fact that the plaintiff himself was also intoxicated has no bearing upon the case, except upon the weight to be given to his testimony. For the purpose of applying this rule, the injury was regarded as having been inflicted by an intoxicated person, not only where the plaintiff himself was injured by the act of an intoxicated person, or such person killed the plaintiff's means of support, that is, her husband, but also where the loss of support resulted from the suicide during intoxication of the plaintiff's husband or father. Where, on the other hand, the injuries were not inflicted by the act of the intoxicated person and the plaintiff's right to recover must be based upon the clause giving a right of action for injuries 'in consequence of the intoxication,' or its equivalent, it is usually held that there can be no recovery unless the intoxication was the proximate cause of the injury.''

Defendant insists and we agree that since plaintiff's action is for an injury which she claims resulted in consequence of her husband's intoxication, it was incumbent upon her to show that such intoxication was the or at least a contributing proximate cause of the injury. It is also urged that plaintiff is precluded from recovery because the injury to her husband did not result from his intoxication or from anything consequent upon that intoxication but from the independent act of a third person, which was the direct and immediate cause of his disability, and that she is further barred from recovery because the defendant might not

reasonably have anticipated and foreseen that as a consequence of Haw's intoxication he would get into an altercation and be injured.

Both plaintiff and defendant cite numerous authorities which they claim support their respective theories and contentions. We have carefully read and considered the cases cited but think that it would serve no useful purpose to discuss same at length since the facts in each distinguish them from the case at bar.

Whether or not Haw's intoxication was the or a contributing proximate cause of the injury he received at the hands of defendant's agent, Belmont, or whether or not the defendant might reasonably have anticipated and foreseen that in consequence of the intoxication of plaintiff's husband it would become necessary to subdue or eject him because of his boisterous conduct and use of loud and profane language, must necessarily be determined from the evidence presented in this cause.

The occurrences in defendant's tavern on the evening in question viewed in the light of Belmont's testimony that ''after he [Haw] had been there about half an hour he started getting noisy as he had always been before, two or three different occasions'' present a chain or logical sequence of events that resulted in Haw's injury. Defendant had knowledge that when Haw became intoxicated he got noisy. Yet one of defendant's agents sold and served him sufficient whisky to intoxicate him. Haw then did get noisy. Defendant did not tolerate boisterous patrons in its tavern. Another of defendant's agents in attempting to eject Haw from its premises injured his eye and it is immaterial whether such injury was caused deliberately and willfully or accidentally and unintentionally. By reason of defendant's previous experiences with Haw it might reasonably have anticipated and foreseen the result of its sale of whisky to him and the law is that one does not have to foresee the actual result of his

conduct, but it is sufficient that such a result might reasonably occur.

In our opinion the situation presented here does not bring this case within the rule that where an injury results, not from the intoxication nor from anything consequent upon the intoxication, but from the independent act of a third party, which is the direct and immediate cause of the disability, there can be no recovery against the dramshop keeper. While we have a third party, defendant's floor manager, inflicting the injury in this case, the defendant must be presumed to have foreseen that its act of selling the liquor to Haw might have produced or been followed by the altercation in which he was injured. In view of the natural and logical sequence of the events leading up to Haw's injury and the fact that Belmont would not have struck him except for the manner in which he conducted himself as a result of his intoxicated condition, in our opinion such intoxication was a contributing factor and at least a proximate cause of the injury.

A clear statement of the correct principle of law applicable to the facts in this case appears in *Jones v. Keilbach,* 295 Ill. App. 598, where the court said at p. 602:

"If the injury to Joe Shipley was directly attributable to his intoxicated condition and there was no other agency intervened sufficient of itself to stand as the cause of the injury, then the intoxicated condition would be considered the proximate cause of the injury, but if he received the injury while intoxicated, through the agency of an outside force but such intervening cause could not and would not have reasonably been brought into action except by reason of the intoxicated condition then in such case the intoxication would be a contributing factor and would be within the provisions of the statute."

We are impelled to hold that Haw's intoxication was a direct contributing factor to his injury, that defendant might reasonably have anticipated such a consequence as Haw's injury as a result of his intoxication, and that plaintiff's action is within the contemplation of the section of the Dramshop Act heretofore set forth.

Inasmuch as there was ample evidence to justify the verdict and judgment, it follows that the action of the trial court was proper in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

Defendant complains that the trial court erred in failing to give to the jury at its request the following instruction:

"If you believe from the evidence that the injury sustained, if any, by Fred J. Haw, Sr., was occasioned to the said Fred J. Haw, Sr., by the wanton and malicious act of Fred Belmont, then you should find the defendant not guilty regardless as to whether or not you further find that Fred J. Haw, Sr., was intoxicated at the time and place in question." It is sufficient to say as to this instruction that since it does not correctly state the law applicable to the facts and circumstances in evidence, the court properly refused to give it.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.